UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BLUE OCEAN GREEN BAY, LLC,

    Plaintiff,

v.                                              Case No. 20-C-825

SAND DOLLAR HOSPITALITY 3, LLC,

    Defendant.

---

## ORDER DENYING MOTION TO VACATE DEFAULT JUDGMENT

Plaintiff Blue Ocean Green Bay, LLC, brought this action against Defendant Sand Dollar Hospitality 3, LLC, alleging tortious interference with contract and breach of contract. Defendant also sought relief in the form of a declaratory judgment. Despite service being effected upon Defendant's registered agent, Defendant never appeared. Ultimately, the Clerk entered default as to Defendant and shortly thereafter, on September 15, 2020, the Court entered default judgment in favor of Plaintiff. The default judgment awarded Plaintiff $215,021.42 and costs in the amount of $607.00 for a total monetary judgment of $215,628.42, along with the declaratory judgment sought by Plaintiff. Nearly a year later, on September 14, 2021, Defendant filed a motion to vacate the default judgment, and that motion is currently before the Court. For the following reasons, Defendant's motion will be denied.

## LEGAL STANDARD

Relief from a default judgment "may be granted pursuant to [Federal Rule of Civil Procedure] 60(b) under exceptional circumstances." *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012). For a default judgment to be vacated, "the moving party must demonstrate: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Id.*

(quotations and citation omitted). The element of "good cause" is embodied by the reasons listed in Rule 60(b)(1): mistake, inadvertence, surprise, or excusable neglect. While it is true that the Seventh Circuit has "articulate[d] a policy of favoring trial on the merits over default judgment," *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009), it is equally true that relief under Rule 60(b) is "an extraordinary remedy." *Eskridge v. Cook County*, 577 F.3d 806, 809 (7th Cir. 2009). With this standard in mind, the Court will turn to Defendant's arguments.

## ANALYSIS

Defendant first argues that good cause exists because it did not timely receive the summons and complaint from its registered agent. Dkt. No. 14 at 3. The action was filed on June 3, 2020. Dkt. No. 1. According to Defendant, its registered agent was to send all documents it received to an email address controlled by Defendant, such that it would receive notice of any action filed against it. Although the record indicates Defendant's registered agent was served on June 11, 2020, Dkt. No. 6, Defendant claims that for whatever reason, perhaps due to an issue with the registered agent's distribution system, *see* Dkt. No. 22-1 at 1, Defendant never received the documents. Furthermore, Defendant claims that it never received notice of, or the documents filed in connection with, Plaintiff's motion for default judgment. Dkt. No. 14 at 4. Thus, Defendant urges, its failure to appear was out of its control, and the Court should vacate the default judgment entered against it.

But Plaintiff counters with rather compelling evidence. On June 5, 2020, just two days after it filed its complaint, Plaintiff sent a letter to Defendant's general counsel, Attorney Gregory L. Thompson, indicating that Plaintiff had filed an action in this Court. Dkt. No. 18-1 at 4. That letter also included language indicating that Plaintiff was still willing to negotiate, but that if no response was received by June 12, 2020, Plaintiff would continue to pursue the action it had filed. Despite this rather clear communication, Defendant still failed to appear. On March 25, 2021, six

2

months after Plaintiff secured a default judgment, Defendant wrote a letter addressed to Shelby Kluvers, seemingly a member of Sand Dollar Hospitality, notifying her that Plaintiff had obtained a default judgment. Dkt. No. 18-3 at 5. Again, Defendant expressed a desire to reach an agreement so that it would not need to take further action, but it seems no resolution was reached. *Id.* That same day, Plaintiff's attorney inquired as to whether Attorney Thompson still represented Defendant with respect to the property. Attorney Thompson responded that he did, leading Plaintiff to direct the letter to attorney Thompson instead. *Id.* at 2.

It thus appears that Defendant had ample notice that a complaint had been filed against it, and furthermore, it had ample notice that a default judgment had been entered against it roughly six months before it filed the motion at issue. In response to this evidence, Attorney Thompson has filed a declaration with the Court, asserting that he believed the complaint was merely a "draft," because the letter accompanying the complaint stated that it was "for settlement purposes only." Dkt. No. 21 at 2. No doubt, the letter did indicate that it was for settlement purposes only, *see* Dkt. No. 18-1 at 4, but it also clearly stated "[e]nclosed please find a copy of the complaint *we filed earlier this week*" and refers to the *"pending litigation." Id.* (emphasis added). Far from being ambiguous, the letter was quite clear that the complaint had been filed with the Court. Nonetheless, Attorney Thompson says, his office checked court records and could not find the filing. Dkt. No. 21 at 2. This is, to some extent, understandable. Plaintiff's letter indicated that the case number assigned to this matter was "2:20-cv-825," Dkt. No. 18-1 at 4, but the case number actually assigned was 1:20-cv-825. A small deviation perhaps, but the one-number deviation is enough for no case to be found when "2:20-cv-825" is searched. Of course, a search for "20-cv-825," omitting the initial number and colon would have returned a result, but it seems Defendant conducted a single search of the whole case number, netting it no results, and never bothered to confirm with counsel for Plaintiff that no action had been filed.

3

Based on these facts, the Court is unable to find that Defendant has established good cause for the default. Defendant, on multiple occasions, was informed of the litigation. Although Plaintiff's letter may have listed the case number incorrectly, Defendant was still notified that the complaint had been *filed* with the Court, and a search for Defendant's name, Plaintiff's name, or the shortened case number would have yielded a result. Additionally, it is worth noting that Attorney Thompson, upon being informed of the default judgment obtained by Plaintiff, seemingly did not express surprise that the case had existed, but rather that his clients were unhappy that Plaintiff did not notify them of its intent to move for default judgment. *See* Dkt. No. 18-6 at 2.[1] In sum, Defendant was sent a copy of the complaint, was informed that it was filed, responded to Plaintiff's attorneys regarding its content, *see* Dkt. No. 18-2 at 2, and was then informed once a default judgment was obtained. This is certainly not an "exceptional circumstance," that warrants the vacation of a default judgment that has been in place for well over a year. In sum, the Court concludes that Defendant has failed to show good cause for its default, and furthermore, has not demonstrated to the Court that its neglectful actions should be considered "excusable."

Even were the Court to conclude that Defendant had established good cause, the Court would still deny the motion on the grounds that Defendant did not take "quick action" to correct its error. *Wells*, 688 F.3d at 890. "Quick action to attack a default judgment is required because the cement of finality hardens each and every day beyond the entry of judgment; the winning party increasingly fashions its expectations and affairs on having and holding the judgment as time passes." *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994). Defendant's motion was certainly timely within the one-year limit set out by Rule 60(c)(1), but the one-year period "represents an

---

[1] The Court notes that, because Defendant failed to appear prior to Plaintiff's motion for default judgment, Defendant was not entitled to written notice of the motion. *See* Fed. R. Civ. P. 55(b)(2).

extreme limit" and the motion may be rejected even if it was filed within that period. *See Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986). Here, Defendant was aware of the default judgment nearly six months before it filed its motion to vacate. *See* Dkt. No. 18-3. And while Defendant contends that it waited so long to file its motion because it was attempting to secure an affidavit from its registered agent, *see* Dkt. Nos. 22; 22-1, those attempts appear to have ceased on June 7, 2021, or thereabout, meaning Defendant waited a further three months to file its motion.

Defendant faults Plaintiff for failing to notify it of the default judgment sooner than it did, but Plaintiff had good reason to suspect that Defendant was aware of the situation. After all, Plaintiff notified Defendant of the litigation shortly after the complaint was filed, and Defendant's general counsel communicated with Plaintiff regarding the complaint. At that point, it would be reasonable for Plaintiff to assume that Defendant was simply ignoring the litigation – why else would Defendant fail to respond after proper service was effected upon its registered agent, after being notified that an action had been filed against it, and after being provided with a courtesy copy of the complaint? Even when Defendant became aware of the default judgment, it seems that it took Defendant nearly two months to seek cooperation from its registered agent, presumably in the form of an affidavit admitting the failure to pass the summons and complaint on to Defendant, and after it failed to secure that cooperation, it still waited until the last possible day to file its motion. The Court cannot consider a six-month response time, in this context, "quick action." *See e.g.*, *PNC Bank, National Association v. Action Sales Group, LLC*, No. 19-cv-720-pp, 2020 WL 1139840, *4 (E.D. Wis. March 9, 2020) (holding one month was not quick action); *Sullivan v. General Plumbing, Inc.*, No. 06 C 2464, 2007 WL 1030236, *4 (N.D. Ill. March 31, 2007) (holding three weeks was not quick action).

Finally, Defendant offers a somewhat strange argument. Attorney Thompson states in his declaration that "[g]iven the duty to avoid unnecessary expenses of serving a summons under Fed. R. Civ. P. 4(d), I expected counsel for [Plaintiff] to request that I accept service on behalf of [Defendant]." Dkt. No. 21 at 3. Thompson claims that, because he did not receive an affidavit of service and because he was not told that Plaintiff had properly served Defendant's registered agent, he believed an answer was not required. *Id.* First, Federal Rule of Civil Procedure 4(d) is a provision that is meant to keep *defendants* from creating unnecessary expenses in the service of summons; indeed, Rule 4(d)(1) specifically notes that it is an "individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h)" that has a "duty to avoid unnecessary expenses of serving the summons." Plaintiff was not required to serve his complaint pursuant to Rule 4(d)(1) because the rule says that a plaintiff *may* request that such a defendant waive service. Plaintiff was free to choose the method of service as to Defendant's registered agent, no matter how costly it may have been to Plaintiff, and Defendant cannot contend that it was somehow prejudiced by Plaintiff choosing that method of service.

Second, it is strange that Attorney Thompson expected a lawsuit to be served on him, but when it was not, he simply concluded that the complaint must not have been filed, and therefore, he need not investigate whether an answer may be due. Certainly, Attorney Thompson must have known about Rule 4(h), which provides that a corporation, unless waiver has been filed, must be served in one of two ways, one of which is by delivering a copy of the summons and complaint to a registered agent. Fed. R. Civ. P. 4(h)(1)(B). That Attorney Thompson himself was not served should not have been the end of the analysis.

To say the least, the situation in this case is strange. Having been notified by Plaintiff's counsel that an action had been filed, Defendant's general counsel first assumed that the complaint was a mere draft, and then later assumed that service had not been completed because he himself

6

had not been served. Notwithstanding his assumptions, Defendant's counsel then conducted a cursory search limited to a single term, and finding nothing from a single search, again concluded that an action was not filed. Months later, after being notified by Plaintiff's counsel that a default judgment worth over $200,000 had been obtained, Defendant waited months before seeking cooperation from its registered agent, and when it failed to secure that cooperation, waited three more months before filing its motion to vacate. Now, Defendant points the finger at Plaintiff, arguing that Plaintiff was engaging in "deception." But Plaintiff cannot be faulted for voluntarily notifying Defendant of both the complaint and the default judgment. Nor can Plaintiff be faulted for failing to persistently nudge Defendant to make an appearance in the case or to provide updates at each stage of the litigation. Defendant may have a meritorious defense to Plaintiff's action, but it has forfeited its right to present such a defense by its failure to respond to the complaint, compounded by its failure to move promptly to vacate the judgment after it received notice of its existence.

## CONCLUSION

For the foregoing reasons, Defendant's motion to vacate the default judgment (Dkt. No. 13) is **DENIED**. The Court concludes that Defendant has failed to show good cause and has also failed to show quick action to correct its error.

**SO ORDERED** at Green Bay, Wisconsin this 27th day of October, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
